'Frances **WILKE** et vir, Appellants,

v.

**F. A. THOMAS** et ux., Appellees.

No. 3261.

Court of Civil Appeals of Texas.

Eastland.

Oct. 19, 1956.

Rehearing Denied Nov. 16, 1956.

Creighton & Creighton, Mineral Wells, for appellant.

Bouldin & Bouldin, Mineral Wells, C. O. McMillan, Stephenville, for appellee.

GRISSOM, Chief Justice.

In August, 1947, F. A. Thomas and wife, Floy Thomas, executed a will which, omitting the formal beginning and the witness clause, was as follows:

"That we, F. A. Thomas and wife, Floy Thomas, of the County of Palo Pinto and State of Texas, being each of sound and disposing mind and memory, but realizing the uncertainty of life and the certainty of death, and being desirous of disposing of our worldly affairs· while we each possess the strength and capacity so to do, do make, publish, and declare this our last joint will and testament, hereby revoking all wills by us or either of us, at any time heretofore made.

1

"We direct that all our just debts shall be paid out of our estate, including last sickness and burial, as soon after the decease of us, or either of us, as may be found practical by our executor or executrix hereinafter named and appointed.

2

"It is our joint and several will and we each hereby devise and bequeath to our beloved niece, Frances Wilke, all of Subdivision "E" of Lot Two (2), Block Seven (7) in the Wiggins Addition to the City of Mineral ·Wells in Palo Pinto County, Texas, together with all of the furniture, furnishings,

floor coverings, beddings, linens and household goods and kitchen furniture of every kind and character located and contained in the building situate upon the above described property, subject the right of the survivor of us to have the possession, use and enjoyment of all of said property, real and personal, so long as the survivor of us shall live, and at the death of the survivor of us, we give, devise and bequeath to the said Frances Wilke the above described real and personal property to be owned and held by her in fee simple. The survivor of us shall be entitled to and shall receive during his or her natural life all of the rents and revenues arising from said property and shall have the full use, enjoyment and possession of said property during his or her natural life.

3

"I, Floy Thomas, do hereby devise and bequeath to my beloved niece, Frances Wilke, all of my silverware, chinaware, linens, jewelry and personal effects of every kind and character, to be owned and held by her in fee simple.

4

"It is our joint will and desire and we direct that all of the rest and residue of our estate, real, personal and mixed shall pass to and be owned in fee simple by the survivor of us, to be used, sold and disposed of by the survivor of us as to him or her shall seem best, with full power and authority to sell, alienate and dispose of said residue of our estate in whole or in part on such terms and for such consideration as to the survivor may seem best.

5

"We hereby nominate, constitute and appoint the survivor of us executor and executrix of this last will and testament and direct that no bond or other security be required of him

or her as such and that no action be had in the courts of this country touching the administration of our estate other than to prove and record this will and return proper inventory and appraisement and list of claims. Upon the death of the survivor, we nominate, constitute and appoint our beloved niece, Frances Wilke, executrix of this our last will and testament and direct that no bond or other security be required of her as such and that no action be had in the courts of this country touching the administration of the estate of the survivor, other than the probate of this will and the return of proper inventory and appraisement and list of claims of the estate.

"Witness our Hands this the 18 day of August, A.D. 1947.

> "F. A. Thomas
> "Floy Thomas"

The will was witnessed by Mr. McCleskey and Mr. Brazelton. It concluded with the recital that it was witnessed by them at the request of both Thomas and wife and that they signed it in the presence of both. Mrs. Floy Thomas died in May, 1949. F. A. Thomas procured the probate of said will, qualified as executor and filed an inventory showing that Floy Thomas owned a community half interest in all their property, including the Thomas Apartments. There was no separate property. Thereafter F. A. Thomas took all the property devised and bequeathed to him by Floy Thomas, to-wit, all of her half interest in all the property owned by them except the Thomas Apartments, and a life estate in the Thomas Apartments. The community property devised by Thomas and wife to "our beloved niece, Frances Wilke," at the death of the survivor of the testators will be referred to as the Thomas Apartments.

F. A. Thomas married again and he and his second wife, Mrs. Mable Thomas, brought this suit to quiet the title to F. A. Thomas' "undivided one-half interest" in

the Thomas Apartments and for a judgment declaring Thomas could devise his community half interest therein to his second wife and thereby deprive Mrs. Wilke of said interest devised to her by the will of F. A. and Floy Thomas. Frances Wilke is the daughter of a half sister of Mrs. Floy Thomas and the half sister is still living. F. A. and Floy Thomas had no children and adopted none. The will was written at the request of Mrs. Floy Thomas and F. A. Thomas did not discuss its writing with the lawyer who prepared it. F. A. Thomas and Mrs. Mable Thomas introduced portions of his deposition, including the following:

" 'All I know about it, she had it made. I didn't have anything to do with it. She said something about making a will. I said, 'I don't want any will. I'm not going to make any will and I wouldn't leave my sister anything if I made a will. I'm going to leave everything to you if I die. And she didn't tell me who was making the will. She got up and got Pete McCleskey and P. R. Brazelton and signed it. I figured then I could break the will if I wanted to. I never willed anything myself. It was her will, you know that.' "

However, Mr. Thomas admitted that he executed the will and did not attack it by reason of fraud, accident or mistake inducing his execution thereof. Mr. Brazelton testified that F. A. Thomas asked him to witness said will. He further testified:

"Q. When Mr. Thomas came to your office, what did he say to you, if anything? A. As well as I remember, Gabe (Mr. F. A. Thomas) came to the north door and told me he wanted to see me, and I think I walked to the door, and he said, 'Me and Floy is going to make a will and want you to witness it.'

"Q. Then what did you do? A. I told him, 'All right.' Then he said

he was going after Pete McCleskey. So I told him I would be there in a minute, and he said 'Well, I expect they will be in there in just a minute.' So I went in there.

"Q. Then what happened; what was said by anyone, or if there was anything said, what was said there at that time? A. Well, they said they wanted to make a will.

"Q. Now, who said that? A. Floy and Gabe, one or each or both of them. Said they had made a will and they wanted me to witness it with Pete.

"Q. Was there anything else said by either of them, and if it was identify the ones that were speaking, if you can? A. Well, Floy told me they had made a will and she wanted me to read it. I told her, I says, 'Well, it's not customary.' She said, 'Well, it's a joint will; we are willing each other.' "

An objection was made to the witness stating what was in the will and it was sustained.

"Q. Mr. Brazelton, what did Mr. Thomas, or Floy, either one, say with reference to what they had done, with reference to executing a will? I'm not asking you what the terms of the will were. But was there anything said with reference to their executing the will? A. Well, as well as I remember, Floy told me that—what they had done. They had made a joint will.

"Q. Well, don't tell what she said they had done, but tell us what was said with reference to the execution of it; what she and Gabe had done? A. Well, she said there was one clause that she wanted me to read to fully understand.

"Q. Did you read it? A. Yes, sir.

"Q. Did you read it out loud? A. Well, I don't remember—no, I just

read it. But she explained it what the intent of the clause was, was about the apartment house. The rest of it I did not read or go into it. She told me versely what was in it and I practically understood what was in it. She went on and explained that she wanted this apartment house—

"Mr. McMillan: Now, we made the objection—

"The Court: Sustained

"A. —that at her death—

"Q. Now, just a minute, Mr. Brazelton. Now, I want you to get what Gabe said and what both of them said, and the conversations there with reference to the execution of it; what they had done, not what the terms of the will were, but what they had done. A. Well, in effect, explained that portion—that clause in there—and I said, 'Well, you all understand what you have done?' They said, 'Yes.' And Gabe said, 'Yes, that's the way it is and that's the way Floy wants it, and we understand it.' In effect he just said they knew what they was doing.

"Q. Was there anything said with reference to whether or not they had agreed on that?

"Q. I mean simply this: Was there any said by either Mr. Thomas or Mrs. Thomas with reference to whether or not they had agreed on a disposition of their property? A. Well, in effect, they said yes they had agreed on it.

"Q. They said they had agreed on it? A. Yes, sir.

"Q. Did Mr. Thomas say that? A. Yes, sir. Gabe said this: 'Porter, that's the way Floy wants it, and that's the way we agreed.'"

He further testified that all the matters mentioned above took place in the presence of Mr. Thomas. Mrs. Frances Wilke testified to a long and close friendship with Mrs. Floy Thomas and that she was like a mother to her all her life. Mr. Thomas was called to testify by the opposite party. He testified that when he executed the will with Floy Thomas he did not intend to be bound by it, but that he did not tell his wife of that intention. He did not refute the testimony of Mr. Brazelton. He admitted that he took all the interest of Floy Thomas in their community property, except the Thomas Apartments, and used it as his own. He introduced a will executed by F. A. Thomas in 1951 wherein he expressly revoked the 1947 will executed jointly with Floy Thomas and devised all his property to Mrs. Mable Thomas.

The court overruled the motion of the Wilkes for an instructed verdict, withdrew the case from the jury and rendered judgment for plaintiffs, as prayed for by them. The effect of this judgment was to hold that F. A. Thomas was not bound by the will of F. A. and Floy Thomas devising the Thomas Apartments to Mrs. Wilke at the death of the survivor of said testators and that, despite said will and his acceptance of benefits under it, that F. A. Thomas still owned and could devise to his second wife the community half interest in the Thomas Apartments that he owned when he and Floy Thomas executed their joint will in 1947. The Wilkes have appealed.

The gist of the Wilkes' points is that the court should have sustained their motion for an instructed verdict and held that F. A. Thomas (and his community one-half interest in the Thomas Apartments) were bound by the joint will of F. A. and Floy Thomas and that F. A. Thomas, having probated Floy Thomas' will and accepted the property therein devised and bequeathed to him, is estopped to make a disposition of his interest in the Thomas Apartments different from that which he made in said joint will. If the devise of the Thomas Apartments to Mrs. Wilke was the result of a contract to so dispose of the

Thomas Apartments, F. A. Thomas is now estopped to make a different disposition.

Under a somewhat comparable fact situation our Supreme Court in Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, 593, said:

"The first question to be decided is: 'Was the will of 1928 a joint and mutual will, contractual as well as testamentary, or merely a joint will? A reading of the will as a whole shows that it was executed by the parties to carry out a planned disposition of all of the 'estate of every description, real, personal, or mixed, which either or both of us may own at our death.' The will made common disposition of each described half section of land to a common named beneficiary."

\* \* \* \* \* \*

"Paragraph 7 makes a common provision for the appointment of an executor and executrix, or the survivor of these two, upon the death of the survivor of the will. In short, the will as a whole, sets forth a comprehensive plan for disposing of the whole estate of either or both. As this Court said in Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1, 'A will like that could not have been made without agreement between the testators that it should be so made. Its very terms are evidence that an agreement was made, and they are entirely consistent with the testimony of the witness as to what the agreement was.' 193 S.W.2d at page 168.

"We hold that the will is contractual. This being a mutual will which is contractual in nature, and Annie E. Murphy, having probated the will and having accepted the benefits thereunder, she was estopped to change any of its provisions. She was bound by the provisions of the will of 1928 as to the disposition of all property owned by her and B. H. Murphy, either jointly, as community, or by either or

both in their own separate right. The plain provision of Paragraph 1 of the will so provides. Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876(1) \* \* \*."

We think the same must be said of, with reference to F. A. Thomas, the will of F. A. and Floy Thomas and the devise to Mrs. Wilke. In Weidner v. Crowther, Tex.Civ.App., 291 S.W.2d 472, 476, the Court, under a similar situation, held that the will together with the facts and circumstances in evidence and the declaration made showed conclusively that the will was made as the result of a contract between the testators. In Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, 878, a will was construed by our Supreme Court which on this point was not materially different from the will in question and the Court said:

"The will as a whole sets forth a comprehensive plan for the disposition of the property of the testators and was clearly made in pursuance of a contract between them. We agree with respondent that it is contractual as well testamentary in character."

In the preliminary paragraph of the will both F. A. and Floy Thomas declare that they make "this our last joint will," revoking all wills made by "us or either of us". In paragraph numbered one they directed that "our" debts be paid out of "our estate". The second numbered paragraph, wherein they devised the Thomas Apartments to Frances Wilke, commenced: "It is our joint and several will and we each hereby devise and bequeath to our beloved niece, Frances Wilke" the Thomas Apartments subject to the right of the survivor to possession and income therefrom as long as he lives and "at the death of the survivor of us, we give, devise and bequeath to the said Frances Wilke the above described real and personal property to be owned and held by her in fee simple." In the fourth paragraph they say it is "our joint will and desire" that all the remainder

of "our" estate shall pass to the survivor. In the fifth paragraph the survivor was appointed independent executor and F. A. and Floy Thomas then stated that at the death of the survivor "we nominate—our beloved niece, Frances Wilke, executrix of this our last will." The concluding paragraph recites that the witnesses were acting at the request of both F. A. and Floy Thomas and signed their names in the presence of both.

The Thomas Apartments, as all other property of F. A. and Floy Thomas, was community property, owned jointly and equally by each. They had no children. They disposed of their entire community estate as a whole, not their respective interests therein. They made mutual devises to each other and specifically, jointly devised the apartments to Mrs. Wilke, showing clearly an agreement to do so. "The will treats the property of the testators as one, and the dispositions made are joint gifts from the testators * * *. A will like that could not have been made without agreement between the testators that it should be so made. Its very terms are evidence that an agreement was made". Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 168, 169, 169 A.L.R. 1. In the absence of a will the survivor would have inherited everything. But each had the legal right by will to deprive the other, without his consent, of the half interest which he would have inherited in the absence of a will. Floy Thomas could have given her half interest in everything to Mrs. Wilke. Wright v. Wright, 154 Tex. 138, 274 S.W. 2d 670. By the express terms of the will they gave Mrs. Wilke the Thomas Apartments at the death of the survivor. By the terms of said will F. A. Thomas, in effect, said to his then wife "if you give me your half of all our property, except the Thomas Apartments, and give me the possession and income from it as long as I live,

I will give my half interest in said apartments to your niece at my death." From the very nature of the will itself, it is inconceivable that it could have been executed except as a result of an agreement between F. A. and Floy Thomas to dispose of the Thomas Apartments as they did. It reveals a comprehensive plan to dispose of all of their property in accord with a contract between them. By such agreement F. A. Thomas obtained a benefit. He probated the will, returned an inventory and obtained her interest in the property. He has accepted the benefits and is estopped to deprive the beneficiary of the agreement of what F. A. Thomas, for a valuable consideration, agreed to give her. We think the will discloses on its face that it was the result of a contract between the testators, certainly it and the undisputed evidence together compel such a conclusion. By said will they jointly disposed of all of their property as one property. Floy Thomas explained such disposition to the witnesses in the presence of F. A. Thomas. Mr. Brazelton's testimony that F. A. Thomas said when he executed the will "that's the way Floy wants it, and we understand it" and "Porter, that's the way Floy wants it and that's the way we agreed" was not refuted by Mr. Thomas. Since Mr. Thomas has probated said will and accepted its benefits he is estopped to alter the disposition of the Thomas Apartments made by the will. See Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169, 169 A.L.R. 1; 169 A.L.R. 71, 74; Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900; 44 Tex.Jur. 668, 669; 168 A.L.R. 72; Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839, 841 (Writ Ref.); Heller v. Heller, Tex.Civ. App., 233 S.W. 870; Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395 (Writ Ref.) and Cunningham v. Townsend, Tex.Civ. App., 291 S.W.2d 438, 446. The judgment is reversed and judgment is rendered denying appellees the relief sought.