## KRUEGER et al. v. KRUEGER et al.
### No. 7834.

Court of Civil Appeals of Texas. Austin.

April 19, 1933.

Rehearing Denied July 29, 1933.

Alfred and P. H. Krueger. The appeal is by plaintiffs from a judgment in favor of defendants, rendered upon a verdict which the court directed, upon motion of defendants, at the close of plaintiffs' evidence.

█ Louise Krueger died April 5, 1932, and the partition was consummated April 28, 1932. It embraced the entire estate of both spouses, all of which was community; and was based upon an inventory valuing the entire estate at $86,076.26. Of this $2,400 in money was set aside to August Krueger, and the balance ($83,676.26) was equally divided among the seven children, the share of each being $11.953.75. Later it was discovered that a time certificate of deposit had been overlooked, a division of the proceeds of which enhanced each child's share ($130.45) to $12,084.20. Each child agreed to contribute $200 per annum to August Krueger during his life, $1400 of the above $2,400 representing the first payment. The remaining $1,000 was to provide a monument to mark the graves of Louise and August Krueger. Additionally, it appears that a $500 note not included in the inventory was left with August Krueger. Other than this note, the $2,400 and the $200 per annum from each child, August Krueger denuded himself in the partition of all his property, including his homestead right in 200 acres of farm land. The falsity of the inventory as pleaded consisted of various items of cash or checks in the way of advancements to Alfred Krueger, rental on land which it was claimed he owed, and some personal property. The aggregate was alleged at $25,000. Additionally, $1,000 rental on land was alleged to be owing by P. H. Krueger. It was charged that August and Alfred Krueger acted together in the alleged fraud "for the purpose of concealing the facts." The petition further charges undue influence of Alfred Krueger over his father, as regards the advances of money and personal property to the former, but, as this was a matter of which only August Krueger could complain, it need not be further noted.

O. E. Roberts, of Taylor, and W. K. McClain and W. H. Nunn, both of Georgetown, for appellants.

Amos Peters, of Taylor, and Wilcox & Graves and Sam Burnap, all of Georgetown, for appellees.

McCLENDON, Chief. Justice.

This is a suit for damages for alleged fraud in a partition of the community estate of August Krueger and his deceased wife, Louise Krueger. The appellants (plaintiffs below) are five of the seven children of August and Louise Krueger, namely, O. H., Emma (Mrs. Wendland), H. A., W. F., and Minnie (Mrs. Teichelman) Krueger. The appellees (defendants below) are August Krueger and the two remaining children,

█ Whether the remedy sought be damages or rescission, the principle is firmly established by adjudication in this state that an affirmative showing of damage is essential to the maintenance of an action sounding in fraud or deceit. Russell v. Industrial T. Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1, where the authorities are collated, and extensively reviewed.

██ At the time the partition was made each of the children owned a one-fourteenth undivided interest in the entire community estate, subject to the homestead estate of August Krueger; and they were entitled to a partition of the entire estate other than

the homestead. August Krueger owned, in his own right, a one-half undivided interest in the entire estate, plus his homestead estate. There was no legal obligation on his part to divest himself of his half interest in the property or of his homestead estate. What he received for this divestiture besides the $500 note and the $1,000 was the sum of $1,400 per annum during his life. Under the agreed value of the property in the partition, Louise Krueger's interest was worth $42,000 (using round figures), less, however, one-half the value of August Krueger's homestead estate. Each plaintiff was, therefore, entitled only to $6,000, less one-fourteenth of the value of the homestead estate. Each plaintiff received, however, $12,000. In exchange for this excess of $6,000, plus one-fourteenth of the value of the homestead estate, each plaintiff agreed to pay August Krueger $200 per annum during his life. As we interpret the above rule, it was incumbent upon plaintiffs to allege and prove that the assets of the estate fraudulently charged to have been withheld from the inventory exceeded the value of August Krueger's interest in the estate, less the value of the $1,400 per annum which August Krueger was to receive for it.

There was no allegation or proof of the value of the homestead estate. For all the record shows, it might have equaled or exceeded the $1,400 per annum which the children agreed to pay. If so, it was essential to plaintiffs' case to show by pleading and proof that one-half of the alleged fraudulently withheld assets exceeded in value $42,000, the value of August Krueger's interest in the estate.

The petition only alleges some $26,000 of fraudulently withheld assets, to the value of only one-half of which would the children be entitled in a partition. They received some $42,000 of August Krueger's individual property, to which they had no legal claim, or approximately $29,000 in excess of their share, had the alleged fraudulently concealed assets been taken into consideration in the partition.

■ Under our above holding it is unnecessary to review the evidence. The statement of facts is quite voluminous (some 200 typewritten pages), and is replete with charges and counter charges as between plaintiffs, on the one hand, and Alfred Krueger, on the other. To give further publicity to the details of a family quarrel would serve no useful purpose. We have carefully perused the entire statement of facts, and deem it sufficient to say that, applying the rule that the evidence must be viewed most strongly in favor of the losing party under a directed verdict, it falls far short of supporting the allegations of the petition as regards the value of the alleged fraudulently concealed assets.

The trial court's judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

The following excerpts from an elaborate motion for rehearing give the substance of appellants' analysis of the issues and of their theory of recovery in the case: "This court seems to have overlooked the fact that the appellants were complaining, principally, against the appellee, Alfred Krueger. It appears from the testimony, that it was he who, after acquiring an undue influence over his father, acquired the management and control of his father's and mother's property, and by and through this means acquired and appropriated to his own use and benefit approximately $20,000.00 worth of their property. That in the partition he concealed this from the appellants, although he had agreed with them that all should participate equally, and that each should account for and be charged with such amounts as had been received from their parents. That in the fraud thus practiced upon them he controlled and directed the conduct and actions of their father. He, with all of his brothers and sisters, contracted and agreed with their father that each should pay to the father the sum of $200.00 per annum as long as the father lived, and that this sum should be secured, in that those getting land in the partition of their mother's estate, and by purchase from their father, would each give a lien on all of said land received; and those getting no land would execute bonds. He, alone of all of the children, failed to comply with this condition. He contracted to pay his father for the property his father was selling him, accepted the property, and then failed to pay. * * * Although the appellee, Alfred Krueger, alone is morally responsible for the fraud committed and is the only person that profited thereby, yet, since this court is dealing with legal and not moral liability, August Krueger must also be held to be liable for the fraud committed. Alfred Krueger had been his agent in the management and control of the property, and Alfred Krueger, by reason of his position as such, and by reason further of his undue influence over his father obtained the large sums that were withheld from the partition."

In broad outline the picture presented by the record shows:

August and Louise Krueger had, through years of toil and thrift, accumulated a community estate, principally of land, worth over $80,000. Each of their children, except Alfred, upon marriage or reaching majority, left home; upon which event August made each a gift of personal property (chat-

tels, money, or both). The gifts to each were not equalized. Alfred remained at home and eventually became the manager of the property for his father. In this he had complete charge, including handling his father's bank account. Early in the year 1931, or prior thereto, the five plaintiff children became dissatisfied with Alfred's management, charged that he was gambling in cotton futures, neglecting the farms, squandering their father's money, and the like. In the spring of 1931, there was a meeting at the Krueger home of all the children for the purpose of arriving at an agreement of partition of the entire estate. This meeting terminated quite unpleasantly, whosesoever version is accepted, and the general result was to intensify the personal animosity that had grown up between plaintiffs and Alfred. About a year passed; and finally on March 30, 1931, Otto swore out a complaint of lunacy against his father, and asked that a guardian be appointed of his estate. The factual allegations of this affidavit read: "Now comes O. H. Krueger, who resides in Williamson County, Texas, a son of August Krueger, who resides in Williamson County, Texas, and informs the court that August Krueger, who is now past seventy-four (74) years of age and whose health and physical condition is impaired to the extent that he is unable to labor or perform any character of physical exercise or to give any attention whatever to his business and that by reason of his extreme age and physical impairments and his confirmed invalid condition have continued for so great a length of time that his mental powers and business capacity have also become weakened and impaired and broken to the extent that he has lost and does not now possess, either the physical or the mental capacity to look after and attend to and safeguard his own business interests, nor even his own personal welfare; that his normal mental powers, (which at one time were those of a normal person) have also completely broken down and given away leaving him with a slow, weakened, greatly impaired mentality, all resulting from his bodily decay, and affliction and impaired physical condition and that by reason thereof the said August Krueger is now a person of unsound mind and is without a lawful guardian, to the best of the knowledge and belief of this affiant."

Warrant was issued, under this charge, and August Krueger was arrested and brought into court on April 1, 1931. The two checks given by August to Alfred, aggregating approximately $7,000, were dated April 1 and 2, 1931, respectively. Louise Krueger was ill at the time her husband was arrested and taken to court, and she died four days later (April 5). The partition was consummated April 28, 1933, and the lunacy proceeding dismissed May 7, 1933. The record shows that, although Otto Krueger alone made the affidavit to the lunacy charge, three of the other plaintiffs were cognizant of it and either advised or assented to it. All of the plaintiffs testified that August Krueger was not of unsound mind; Otto further testifying that the complaint was made upon suggestion and advice of his attorney.

While plaintiffs alleged and testified that the preliminary agreement among all the children upon which the partition was predicated was that each child was to account for advances received from their father, the record shows that this was not done. No effort was made to equalize the several gifts or advances; and the only thing taken into account was actual indebtedness in the form of notes which some of the children owed their father.

We think our analysis of the case in our original opinion, and the conclusions there reached, are correct.

■■ Up to the death of Louise Krueger, August Krueger had the exclusive power of disposition and control of the community estate, subject to the sole limitation that therein he might not commit a fraud upon his wife. Subject to this limitation he was free to use his judgment in the management, committing it, if he deemed proper, to Alfred; and he might even make gifts of the community property to his children. No one but Louise Krueger could complain of the transactions between August and Alfred Krueger, or of the former's management of the property through the latter. If these transactions and this management amounted to fraud upon the rights of Louise Krueger in the community estate, her heirs (other than Alfred) could, in a partition of the estate, require August Krueger to account to them to the extent that their interest in their mother's estate had been diminished by the fraud. This, we believe, is the full extent of any legal obligation which existed in favor of plaintiffs against August Krueger under any theory presented by the record in this case.

In so far as August Krueger's interest in the estate is concerned, he was sui juris, and plaintiffs dealt with him as such. He was free to make such disposition of it as he chose, and he alone could complain of Alfred's actions toward and dealings with him, or bring him to account therefor. If he chose to make a gift to Alfred, or approve of his mismanagement of his property, he had the legal right to do so. Plaintiffs could not bring Alfred to account in their father's interest; nor compel the latter to do so against his will.

Appellants contend that the partition of the entire estate was in effect a partition

of their mother's and purchase of their father's estate. To the extent of the annuity ($1,400 per annum during the life of their father), there was a consideration for the partition. But it can hardly be said that this was all or even the major portion of the consideration. In the main the partition of August Krueger's property was a gift to his children, the annuity amounting to only a small portion of what he was parting with; and constituting in effect the reservation of but a small competency for his declining years. Even if every item claimed in plaintiffs' petition were added to the community. estate, each child received in the partition through gift from his father's property vastly more than he was entitled to as his interest in his mother's estate, plus the meager consideration by way of annuity he agreed to pay to his father.

After having accepted and received the full benefit of this gift, which, but for the annuity, left their father virtually penniless in his old age, they now seek to call him to account because he has favored Alfred above them—a course clearly within his legal rights. If they are permitted to recover and are unable to satisfy their judgment against Alfred, they can offset their annuity obligations against the judgment against their father. A mere statement of the effect of their contention carries with it, we think, its own refutation.

■ Appellants contend that we have applied the wrong measure of damages, quoting R. S. art. 4004, fixing the measure of damages for fraudulent sales of real estate as "the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract." There was no misrepresentation or unfulfilled promise regarding any of the property, real or personal, which plaintiffs received, and none claimed. The entire claim of plaintiffs is predicated upon fraudulent favoring of Alfred, in that he was not required to bring into the partition of the entire community estate gifts he had received from his father and obligations to his father as the result of his fraud and mismanagement. A complete answer on August Krueger's part to plaintiffs' suit, so predicated, would have been: "I gave you of my own property more then you had any legal right to, even if Alfred had been brought to full account as now urged by

you; you have no legal claim because I have favored Alfred, even though, as you assert, I may have concealed my favor from you." August Krueger did not testify in the case. He was present in court, but was not called by plaintiffs, and the court directed a verdict at the close of plaintiffs' evidence. We do not have his version of the transaction from his own lips; but he filed a general denial to all the allegations of plaintiffs' petition, and whatever answer he might have given, under the showing made, is available in his behalf.

There is one other phase of the case to which we shall advert. It appears that some two weeks after the partition, Otto Krueger discovered, as he states, for the first time that his father had given Alfred the two checks of April 1 and 2. This precipitated the present suit, and was the gravamen of plaintiffs' claim as shown all through their testimony. To require an accounting for Alfred's mismanagement appears to have been an afterthought. The record shows in this regard that plaintiffs claimed all along that Alfred was squandering the estate. This was the motivating cause of bringing the lunacy charge—so they assert—to put the property in the hands of an "administrator," and thereby to protect their father's, as well as their own, interest. They admit that the charge of mental incapacity was not true, and while it was still pending they made a full settlement of all their claims and grievances with their father. Otto claims that he did not understand the full purport of the affidavit he made, and it is immaterial whether he was guilty of an intentional false affidavit. Giving him the benefit of every doubt in favor of the moral aspects of his conduct, the purpose of the proceeding, of which he and those assenting thereto were fully aware, was to wrest from their father the control of his own property on the ground that they believed it was being mismanaged and fraudulently dissipated and squandered by Alfred. It can hardly be said that, although they may not have known the details, they were not sufficiently cognizant of facts and circumstances to put them upon inquiry, which, if properly pursued, would have disclosed all they have subsequently developed. See Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 721. We are not, however, resting our decision upon this issue.

The motion is overruled.

Overruled.