**WALLACE v. PEOPLES et al.**

No. 10148.

Court of Civil Appeals of Texas. Galveston.

Dec. 12, 1935.

Rehearing Denied Jan. 30, 1936.

C. L. Bass, of Houston, for plaintiff in error.

Mark M. Carter, of Goose Creek, for defendant in error Mrs. Savannah G. Peoples.

GRAVES, Justice.

Mrs. Wallace appeals from a judgment against her in favor of Mrs. Peoples for $7,231.70, with foreclosure of a deed of trust and vendor's lien against the first four lots in block 30 of the Goose Creek townsite in Harris county, which property had been previously conveyed to her by Mrs. Peoples with retention of the two liens to secure the payment of the deferred purchase money; the judgment having been entered after respective motions therefor in her own behalf had been filed by each of the women parties, on a jury's verdict in response to special issues, which, together with the jury's answers thereto, were these:

No. 1. "Do you find from a preponderance of the evidence that the plaintiff, Mrs. Peoples, represented to the defendant, Mrs. Wallace, as a positive fact, prior to the closing of the purchase of the property in question, that she, Mrs. Peoples, had a good, marketable title, as that term is herein defined, to the property in question?" Answer: "Yes."

No. 2. "If in answer to special issue No. 1 you have answered 'Yes,' and only in that event, then answer this special issue No. 2: Do you find from a preponderance of the evidence that the defendant, Mrs. Wallace, relied upon such representation, if any?" Answer: "Yes."

No. 3. "If, in answer to special issue No. 1, you have answered 'Yes,' and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that such representation, if any, induced the defendant, Mrs. Wallace, to purchase from the plaintiff, Mrs. Peoples, the property in question?" Answer: "It did."

No. 4. "Do you find from a preponderance of the evidence that the attor-

ney for plaintiff, Mark Carter, represented to the defendant, Mrs. Wallace, as a positive fact, prior to the closing of the purchase of the property in question, that Mrs. Peoples had a good, marketable title, as that term is herein defined, to the property in question?" Answer: "Yes."

No. 5. "If in answer to special issue No. 4 you have answered 'Yes,' and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the defendant, Mrs. Wallace, relied on such representation, if any?" Answer: "Yes."

No. 6. "If, in answer to special issue No. 4 you have answered 'Yes,' and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that such representation, if any, induced the defendant, Mrs. Wallace, to purchase from the plaintiff, Mrs. Peoples, the property in question?" Answer: "It did."

No. 7. "Do you find from a preponderance of the evidence that in deciding to purchase the property in question from the plaintiff, the defendant, Mrs. Wallace, relied upon the opinion of her attorney, Joe Reid, as to the title to the property in question?" Answer: "She did."

No. 8. "If, in answer to special issue No. 7, you have answered 'She did,' and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that Mrs. Wallace, the defendant, was induced to purchase the property in question because of the opinion, if any, given to her by her attorney, Joe Reid, in regard to the title thereto?" Answer: "She was."

Brown & Root, Inc., had also been made a party to the suit because of a paving lien it held against the property, but since it was conclusively, if not undisputedly, shown that its lien was a prior and superior one to the claims of either of the other parties, the trial court in its judgment so declared against them both, but with the further provision in its decree that Mrs. Peoples might pay off its lien and thereby become subrogated as against Mrs. Wallace to all of its rights as such a prior and first lienholder against the property; the corporation defendant having thus passed out of the cause, as the quoted issues and verdict disclose, it became a contest on the facts as between the two ladies.

On the appeal, notwithstanding the jury's findings that when she purchased the property from Mrs. Peoples she relied not only upon the statements of the seller and her attorney that the title to it was good, but that she also relied upon the opinion of her own attorney to the same effect, Mrs. Wallace inveighs here against this adverse determination upon the same ground she urged against the suit below; that is, that the consideration for the notes she gave for it when buying the property had failed in that she did not receive a merchantable title to it as Mrs. Peoples and her attorney had then represented to her she was getting, because the will of J. I. Peoples, Mrs. Peoples' deceased husband, had passed to her only a life estate therein with remainder to his own heirs. Notwithstanding the fact that no question was submitted to the jury nor requested to be by either party as to whether a merchantable title had passed to her, she insists here that the evidence so showed and that in consequence the trial court's judgment against her constituted fundamental error.

█ This contention cannot be sustained, the fatal vice in it being that there is neither finding by the court or jury (no such issue having been presented to either) that the representation Mrs. Peoples so made as to her title was even untrue, nor does that indispensable fact appear aliunde from the evidence; indeed, plaintiff in error's own testimony brings out the contrary, in that she uncontrovertedly showed that the only heirs or devisees of Mrs. Peoples' deceased husband had all validly conveyed for full value paid them out of her money whatever right or title they got from him, under his will or otherwise, to Mrs. Wallace as part and parcel of this purchase transaction of the property by her; wherefore, her sole defense against the notes and liens, that she had been induced to make the purchase by a false representation that the title she was getting was a good, marketable one, fails. Undisputedly the property had been the community homestead of Mr. and Mrs. Peoples until his death, and hers there-

after until she so sold and delivered it to Mrs. Wallace, who had likewise possessed and used it as her own homestead up to and inclusive of the time of this trial, neither her right nor title thereto having ever been questioned by any one.

The material provisions of the joint document involved were these:

"First: It is our will and desire, and we, each of himself, so direct that all property of which we, or either of us, now possess, or which we or either of us may hereafter acquire, will and shall be and become the property of the surviving testator or testatrix to have, possess and enjoy during his or her lifetime.

"* * * provided, that the following described property, to-wit: * * * together with the improvements thereon shall not be sold, mortgaged or encumbered during the life time of either of us; but shall remain unencumbered to be used and enjoyed during the life of the surviving testator or testatrix herein.

"Third: We direct that after the decease of the surviving testator or testatrix herein, and the payment of all our just debts and funeral charges, that the remainder of our estate, real and personal, shall be disposed of as follows:

"Fourth: We direct that the homestead, as herein described, be sold as soon after the decease of the survivor here as may conveniently be done without sacrificing the value thereof, and that all personal property be sold, and be divided into two equal parts, onehalf of which shall be and become the property of the heirs of J. I. Peoples and the other one-half shall be and become the property of the heirs of Savannah G. Peoples.

"Fifth: And I, J. I. Peoples, direct that the property inherited from me by my heirs be equally divided between them share and share alike.

"Sixth: And I, Savannah G. Peoples, direct that the property inhereted from me by my heirs be equally divided between them share and share alike."

Mr. Peoples alone having died in the meantime, this jointly executed act between himself and his wife had taken on testamentary character only as affected his community one-half of the property, leaving her as one living free to otherwise dispose of her own like half. So regarded, its plain effect as to his portion—there being no penalty nor right of re-entry imposed as for a violation of the anti-alienation provision, nor any trust relationship of any sort created, the fulfillment of which required its enforcement—was to vest in her an absolute or complete life estate, which she could convey, despite the attempted anti-alienation restriction, with remainder to his children by his prior marriage. Sprinkle et al. v. Leslie et al., 36 Tex.Civ.App. 356, 81 S.W. 1018, writ of error refused, and cases there cited.

In the absence of statutes in Texas providing otherwise, it seems equally clear that by "my heirs," as thus without limitation or contrary intimation designated in his will by Mr. Peoples, he naturally meant those living at the time of his death, and that these in turn —having acquired a vested interest—also had the legal right to sell it, as they did do, on the happening of the contingency specified. 69 C.J., p. 249, par. 1272; p. 250, par. 1273; p. 262, par. 1279; p. 266, par. 1280; p. 269, par. 1285.

These conclusions—regardless of any contentions that may not have been specifically discussed—require an affirmance of the learned trial court's judgment; it will be so ordered.

Affirmed.