S. E. BROWN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6578–66. Filed April 8, 1969.

*Wentworth T. Durant* and *Ronald M. Mankoff*, for the petitioner. *Roy E. Graham*, for the respondent.

OPINION

The principal issue herein is whether petitioner made a taxable gift of the remainder interest in his share of the community property upon Maude's death. Resolution of this issue depends upon whether petitioner made a transfer of such remainder interest within the provisions of sections 2501(a) [1] and 2511(a),[2] I.R.C. 1954.

The fundamental prerequisite for the application of section 2501(a) is that there must be a completed, irrevocable transfer of property by gift. *Estate of Sanford* v. *Commissioner*, 308 U.S. 39 (1939). Respondent contends that there was a transfer of the remainder interest in petitioner's half of the community property at the time of Maude's death as a consequence of his election to accept the benefits conferred upon him by Maude's will or, alternatively, as a consequence of a contract evidenced by the "joint and mutual will." [3] Petitioner,

---

[1] SEC. 2501. IMPOSITION OF TAX.

  (a) TAXABLE TRANSFERS.—

    (1) GENERAL RULE.—For the calendar year 1955 and each calendar year thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar year by any individual, resident or nonresident.

[2] SEC. 2511. TRANSFERS IN GENERAL.

  (a) SCOPE.—Subject to the limitations contained in this chapter, the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but in the case of a nonresident not a citizen of the United States, shall apply to a transfer only if the property is situated within the United States.

[3] Respondent has caused considerable confusion by his attempt to indiscriminately merge these two arguments into one. It is clear that under the law of Texas the concept of election and the concept of mutual wills are separate, distinct, unrelated, and productive of entirely different legal consequences. See *Graser* v. *Graser*, 147 Tex. 404, 215 S.W.2d 867, 870 (1948).

on the other hand, argues that the doctrine of election has no application to the facts of this case, that the will in question was not a mutual or contractual will, and that, even if the will were contractual, there still was no taxable gift of the remainder interest in his share of the community property at Maude's death.

We will first consider respondent's argument that there was a transfer of the remainder interest by operation of the election doctrine of the law of wills. Respondent argues that Maude's will "unequivocally conveyed the [remainder] to all of the community property to the petitioner's sons"; that petitioner was forced to elect between taking the benefits which accrued to him under the will or retaining his complete ownership interest in his share of the community property; that petitioner elected to take under the will; and that by so doing he transferred by gift his interest in the community property, subject to a retained life estate therein.

The crucial question with respect to the doctrine of election is whether Maude's will "unequivocally conveyed" the remainder interest of petitioner's share of the community property to their sons at her death. If such is the case, there can be no doubt that petitioner, in accepting the benefits provided him under the will, relinquished the remainder interest in his share of the community property.

We are controlled by the law of Texas in determining the legal effect of the joint will upon petitioner's property rights. *Lang* v. *Commissioner*, 304 U.S. 264 (1938); *Commissioner* v. *Chase Manhattan Bank*, 259 F.2d 231 (C.A. 5, 1958), reversing 25 T.C. 617 (1955), certiorari denied 359 U.S. 913 (1959).[4]

The doctrine of election, based on the equitable principle of estoppel by conduct, applies in those situations where a testator purports to dispose of property belonging to a beneficiary and at the same time gives the beneficiary other property, and it is evident that the testator intends the beneficiary to take under the will only upon the condition that he relinquishes his own property which then passes in accordance with the dispository provisions of the will. The beneficiary, by electing to accept the benefits provided for him under the will, is estopped to deny that his property passes under the will. Conversely, if he elects to retain his own property, he loses the testamentary gift. *Graser* v. *Graser*, 147 Tex. 404, 215 S.W.2d 867, 870 (1948); *Commissioner* v. *Chase Manhattan Bank*, *supra* at 239–240. It is well established in Texas that the election doctrine applies only in those situa-

---

[4] Respondent cites *Chase Manhattan Bank* and, after stating that it is "comparable to the instant case," sets out more than two pages of quoted material therefrom but fails to specify how the quoted excerpts relate to the facts in the instant case. The Court of Appeals in *Chase Manhattan Bank* held that where a husband in Texas, a community property State, transfers community property by gift and the wife fails to assert her right to her community interest in such property, the wife is deemed to have made a gift of her interest therein. Suffice it to say that, after careful study of this case, we conclude that it has no relevance as support for any of respondent's contentions.

tions where the testator's intention to dispose of property that is not his own is shown by clear and unequivocal language. *Graser* v. *Graser*, *supra; Gibony* v. *Hutcheson*, 50 S.W. 648 (Tex. Civ. App. 1899); *McFarland* v. *Campbell*, 213 F.2d 855 (C.A. 5, 1954); *Commissioner* v. *Chase Manhattan Bank*, *supra* at 240. If a will permits of a reasonable construction not requiring an election by the beneficiary, the doctrine does not apply, because the "law presumes that no man will attempt a testamentary disposition of the property of others." *Avery* v. *Johnson*, 108 Tex. 294, 192 S.W. 542, 544 (1917); *Schelb* v. *Sparenburg*, 124, S.W.2d 322 (1939); *Graser* v. *Graser*, *supra; Commissioner* v. *Chase Manhattan Bank*, *supra*. In our opinion the will executed on April 19, 1961, though joint in the sense that it incorporated in one instrument the testamentary dispositions of both petitioner and Maude, was in effect the separate will of each. *Aniol* v. *Aniol*, 127 Tex. 576, 94 S.W.2d 425 (1936); *Winston* v. *Griffith*, 133 Tex. 348, 128 S.W.2d 25 (1939); *McFarland* v. *Campbell*, *supra*. The joint will was in fact probated on Maude's death as her separate will.

Did Maude by clear and unequivocal language purport to dispose of the remainder interest in all the community property, including petitioner's share? We think not. It is insufficient that her will may be construed as revealing such an intention. It is required that the language of the will *conclusively* show that it was her intent to dispose of the remainder interest in petitioner's share of the community property for the election doctrine to have any application. *Avery* v. *Johnson*, *supra* at 544; *Commissioner* v. *Chase Manhattan Bank*, *supra* at 240. The instrument, as Maude's will, does not purport to dispose of petitioner's property in the clear and unequivocal language required in *Avery* v. *Johnson*. Actually it does not purport to do so at all.

The key to the correct interpretation of this instrument is found in the second paragraph which provides that "it is the intention of each of us to dispose of only our part of the community property." Obviously the parties meant that each intended to dispose of his or her part of the community property; neither intended to dispose of the other's property. See *Cammack* v. *George*, 377 S.W.2d 687 (Tex. Civ.App. 1964). The only community property which the parties owned was owned jointly between them. They owned no community property jointly with anyone else. Therefore, by using such language in the will, the parties meant that each was disposing of his or her share of the community property. Otherwise the provision has no meaning. And in interpreting a will we must "give effect to every part of the will, if it is legally possible or practical to do so." *Curtis* v. *Aycock*, 179 S.W.2d 843, 847–848 (Tex.Civ.App. 1944).

This conclusion is further supported by the rule fashioned by the **Supreme Court of Texas** that, in interpreting a joint will, the "provi-

sions * * * dealing with 'our property' are to be interpreted as though each of the parties were making separate disposition of his or her property only." *Weidner* v. *Crowther*, 157 Tex. 240, 301 S.W.2d 621, 627 (1957). See also *Graser* v. *Graser, supra* at 870.

When read in light of the restrictive gloss of the language of the second paragraph and of the rule of interpretation laid down in *Weidner* v. *Crowther, supra,* Maude's will provides, in pertinent part, as follows:

### SECOND

All of the property that [I] now own or have an interest in, is community property and it is [my] intention * * * to dispose of only [my] part of the community property that [I] now own or have an interest in or that [I] hereafter acquire and any separate property, if any, [I] may, at any time acquire after this date.

### THIRD

It is [my] will and desire that * * * S. E. Brown * * * shall have all of the income from all of the property [I] own at the time of death, real, personal or mixed and wherever located for and during [his] lifetime * * *; [he] also to have the right to manage and control said properties during his * * * lifetime and [I] do hereby give, devise, and bequeath to [him] * * * all of the income from all of the property, [I] own at the time of death, whether real, personal or mixed and wherever located for and during [his] lifetime * * *; which [he] is to have the full power, right and authority to manage and control all of said property during [his] lifetime * * *; [he] to have the use, enjoyment and occupancy of all of said properties during his * * * lifetime.

### FOURTH

[I] * * * subject to the provisions of the Third paragraph of this will, give, devise and bequeath to [my] sons SAM E. BROWN and BILLY N. BROWN all of [my] property of every kind and character and wherever located, whether in the State of Texas or any other state, in full fee simple, share and share alike.

When the provisions of Maude's will are read and interpreted in this manner, it is clear that she intended to give petitioner a life estate in her one-half interest of the community property, and their sons the remainder in such property, without affecting in any way petitioner's complete ownership as to his one-half of the community property. The instrument did not require that petitioner give up his community property as a condition to receiving the life estate.

Correlatively, prior to Maude's death and prior to petitioner's revocation of the instrument as his will, the instrument had a similar import as his separate will. Had he been the first to die, the instrument would have operated to have given Maude a life estate in his share of the community property with the remainder therein to their sons. Similarly, under such circumstances, the instrument could not have operated to divest Maude of her remainder interest in her share of the community property, as it did not divest petitioner of the remain-

der interest in his property. Since Maude did not purport by clear and unequivocal language to dispose of petitioner's property, there is no basis for the application of the doctrine of election herein, and petitioner took the benefits under Maude's will without any equities arising against his own property. In other words, petitioner's acceptance of the life estate under Maude's will did not effect a "transfer" of the remainder interest in his share of the community property.

Respondent maintains that petitioner and Maude made an inter vivos gift and bequest, respectively, by using the terminology to "give, devise and bequeath to our sons SAM E. BROWN and BILLY N. BROWN all of our property." We agree with respondent that by this provision Maude made a bequest of the remainder interest in her share of the community property to her sons, but we disagree with him, for the reasons already stated, that petitioner made an inter vivos gift of the remainder in his community property. As to petitioner, the joint will at Maude's death, prior to the time he revoked it as his will, was no more than just that—his will. It is settled law that a will speaks only at the time of the testator's death. Petitioner, by executing the joint will as his separate testament, intended only to make a testamentary disposition, not an inter vivos transfer.

We will next consider respondent's contention that there was a transfer of the remainder interest by gift on the ground that the will which was jointly executed by petitioner and Maude and which purported to be mutual, as well as joint, was executed pursuant to a contract.

A "mutual" will, as defined by the Supreme Court of Texas in *Nye* v. *Bradford*, 144 Tex. 618, 193 S.W. 2d 165 (1946), is a will executed in pursuance of an agreement between the two testators to dispose of their property in a particular manner, each in consideration of the other. At the heart of a mutual will lies a contract of the parties. *Weidner* v. *Crowther*, *supra* at 625. Where two people execute their respective wills pursuant to an agreement as to the disposition of their property, upon the death of the first testator to die, the underlying contract, not the will, becomes irrevocable. If the survivor breaches his obligation not to revoke his will, the injured party may enforce the contract, but not the will, in a suit in equity against the estate of the defaulting party. *Weidner* v. *Crowther*, *supra* at 625; *Cate* v. *Cate*, 235 S.W. 2d 456 (Tex.Civ.App. 1950). A contract to will property is not enforceable until the death of the promisor. *Cheney* v. *Cheney*, 82 S.W. 2d 1024 (Tex.Civ.App. 1934).

Respondent claims that the instrument involved herein is in fact what it purports to be—a mutual will; that a "joint and mutual" will becomes irrevocable at the death of the first testator; and that, upon Maude's death, petitioner could not revoke such joint and mutual will. Respondent concludes that petitioner at that time "irrevocably dis-

posed of his property" and thus made a taxable gift. Petitioner counters by asserting that the will, though joint, was not "mutual" in the legal sense of the term and that, even if it were mutual, there still was no taxable gift of the remainder interest at Maude's death.

In support of his contention, respondent, among other things, points to and relies on the provision in the introductory paragraph of the will which describes the instrument as a "joint and mutual will," and on language in the protest filed with the Internal Revenue Service in which petitioner referred to the instrument as a "joint and mutual will."

Petitioner, relying principally on his testimony which was corroborated by Fike, the attorney who drafted the instrument, argues that the instrument was not executed pursuant to any contract, notwithstanding the provision in the introductory paragraph. Respondent objected to the admission of such testimony on the ground that it violated the parol evidence rule because it was offered to vary or contradict the terms of the instrument.[5] In tentatively overruling the objection, the Court indicated that the question of the admissibility of this testimony might be crucial. Consequently, it was suggested that counsel brief this evidentiary question at the same time they briefed the substantive issues. Neither party, however, has complied with our request.

The parol evidence rule provides that "when two parties *have made a contract and have expressed it in a writing* to which they have both assented as the complete and accurate integration of the contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." (Emphasis added.) 3 Corbin, Contracts, sec. 573 (1960). As can be seen from this statement, the parol evidence rule presupposes the existence of a valid, subsisting contract. It follows as a matter of logic and principle that this rule does not preclude evidence of intention showing that no contract was in fact made. *Murray v. Lichtman,* 339 F.2d 749 (C.A.D.C. 1964); *Metals Development Co. v. United States,* 322 F.2d 210 (C.A. 5, 1963); *Nice Ball Bearing Co. v. Bearing Jobbers,* 205 F.2d 841, 845 (C.A. 7, 1953); *Thompson v. Baltimore & O. R. Co.,* 59 F. Supp. 21, 40 (E.D. Mo. 1945). This rule is also recognized by the courts of Texas. See *Baker v. Baker,* 143 Tex. 191, 183 S.W.2d 724, 728 (1944), where the Supreme Court of Texas said: "Parol evidence is always competent to show the non-existence of a contract."

---

[5] Respondent also objected to this testimony on the ground that it called for a legal conclusion from petitioner. This objection is without merit since the crucial issue to be decided is whether the parties intended to be contractually bound by the terms of the instrument.

Where, as here, the issue is whether there is in fact a contract, the parol evidence rule by its very terms has no application, and any evidence tending to explain or clarify the intention and purpose of the parties is clearly admissible. Accordingly, we have accepted the testimony concerning the intention of the parties as not falling within the ambit of the parol evidence rule. But even if the testimony were offered for the purpose of varying or contradicting the terms of the writing, we think it still would be admissible. The rule in this Court is well settled that the parol evidence rule has no application in Federal tax cases where the Government is not a party or privy to a party to the instrument. What we said in *Haverty Realty & Investment Co.*, 3 T.C. 161, 167 (1944), still pertains today:

> The Supreme Court of the United States, almost all the Circuit Courts of Appeals, and this Court have held that the parol evidence rule cannot be invoked by a third party, not a party to the written instrument involved. * * * [T]he United States is a stranger to the contract. It asserts a tax liability, not a claim derived from either party to the contract.

It has generally been held that the parol evidence rule applies only in those cases where the litigants are parties to the written instrument or privies to such parties. *J. Leonard Schmitz*, 51 T.C. 306, 317 (1968); *C. L. Nichols*, 43 T.C. 135, 145 (1964). And it does not apply to a controversy between the Government and one of the parties to the instrument. See *Landa* v. *Commissioner*, 206 F.2d 431, 432 (C.A.D.C. 1953), where the Court of Appeals said:

> Generally, "[i]n the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding." [*Helvering* v. *F. & R. Lazarus & Co.*, 308 U.S. 252 (1939).] The taxpayer as well as the Commissioner of Internal Revenue is entitled to the benefit of this rule. Moreover, the oral testimony here was not barred by the parol evidence rule, since the Commissioner "was not a party or privy of a party to [the] written agreement[s]." [*Scofield, Collector of Internal Revenue* v. *Greer*, 185 F.2d 551, 552 (C.A. 5, 1950).]

The rule in the Texas courts is that the burden of proving a contract for the execution of wills containing reciprocal provisions is upon the party asserting the existence of such a contract. *Nye* v. *Bradford*, *supra*. But in this proceeding the burden of proving the nonexistence of a contract is upon petitioner. Rule 32, Tax Court Rules of Practice.

In determining whether or not there is a subsisting contract for the execution of mutual wills, courts generally look to the provisions of the will itself, the testimony of competent witnesses as to the alleged agreement, and declarations of the alleged promisor. Evidence as to the relations and conduct of the parties and as to other facts and circumstances that tend to prove that an agreement was or was not made is also admissible. *Nye* v. *Bradford*, *supra*.

Turning to the provisions of the instrument in question, we find no express recitation that the parties had a contractual understanding or that it was the product of an agreement. Nowhere in the instrument are there any words of promise, agreement, or contract. We do not think the will is contractual in nature despite the reciprocal dispository provisions and the use of the word "mutual" in the introductory paragraph.

It has been held that a jointly executed will containing mutual and reciprocal provisions, absent any other evidence of the parties' intention, is sufficient to show the existence of a contract to make such a will. *Dougherty* v. *Humphrey*, 424 S.W.2d 617 (Tex.Civ.App. 1968). Respondent relies solely on *Wilke* v. *Thomas*, 295 S.W.2d 283 (Tex. Civ.App. 1956), as supporting his contention that—

For many years, the Texas courts have held that a joint and mutual will, which is probated and under which the survivor took the property, represented a conclusive presumption that the contract was entered into as stated in the joint and mutual will.

We find respondent's statement of the law anomalous. He must not be using the term "mutual" in its legal sense, i.e., a will executed pursuant to a contract. Apparently what respondent means to say is that a joint and reciprocal will, which is probated and under which the survivor takes the property, represents a conclusive presumption that such a will was executed pursuant to a contract. If a will were mutual in the first instance, the act of probating the will and taking under it could not make it any more mutual. See *Weidner* v. *Crowther, supra.* While the court in *Wilke* v. *Thomas* said, "We think the will [which was joint and reciprocal] discloses on its face that it was the result of a contract between the testators," it did not say that evidence of the will itself amounted to "a conclusive presumption" that it was based on a contract. Moreover, the court in *Wilke* v. *Thomas* did not base its holding that the will was contractual solely on the evidence of the instrument itself. The will in that case was jointly executed by the husband and wife and contained reciprocal provisions with the property going to the wife's niece upon the death of the survivor. Upon the wife's death, the husband probated the will and received a life estate in her share of the community property. He subsequently remarried and brought an action to quiet title to his share of the community property. The contract beneficiary, the niece, contested the quiet-title action contending that the survivor was contractually bound to convey his property to her at his death pursuant to the terms of the joint will. It was, on these facts, that the court held that the will and "the undisputed evidence together" compelled the conclusion that it was the result of a contract between the testators. The undisputed evidence to which the court referred was the unrefuted testimony of one of the persons who

witnessed the execution of the joint will. This witness testified that the survivor at the time he executed the will said, "that's the way Floy (the wife) wants it, and we understand it," and "that's the way Floy wants it and that's the way we agreed." *Wilke* v. *Thomas, supra* at 288. When viewed in light of its particular facts, that case does not stand for the broad proposition for which respondent cites it.

Contrary to respondent's contention, there is substantial authority for the rule that a will jointly executed by two persons is not necessarily contractual in nature, even though it contains reciprocal testamentary dispositions. In *Curtis* v. *Aycock, supra* at 847, the court said:

But it does not follow merely because a husband and wife jointly sign a will, even though the terms and provisions thereof be mutual and reciprocal, that the same is necessarily contractual in nature or is made in pursuance of a contract between them or that all of the devises therein contained become irrevocable. 44 T.J. pp. 665–670, and authorities; Wagnon v. Wagnon, Tex. Civ. App., 16 S.W. 2d 366, error refused; Aniol v. Aniol, Tex. Civ. App., 62 S.W. 2d 688; Id., 127 Tex. 576, 94 S.W. 2d 425; Wallace v. Peoples, Tex. Civ. App. 89 S.W. 2d 1030; Winston v. Griffith, 133 Tex. 348, 128 S.W. 2d; Garland v. Meyer, Tex. Civ. App. 169 S.W. 2d 531.

Despite the joint and reciprocal form of the will, we are satisfied that petitioner has shown by competent evidence that it was not contractual in nature or made in pursuance of a contract.

Since it was Fike's suggestion that the parties incorporate their respective wills into one instrument to save time and money, we attach little significance to the use of the joint and reciprocal form of the instrument as tending to show that it was contractual or based on a contract. Unlike *Wilke* v. *Thomas, supra*, there is no extrinsic evidence that Maude or petitioner ever stated that they had agreed or contracted between themselves as to the disposition of their respective property. Moreover, neither Maude nor petitioner requested Fike to draft a joint and mutual will for them. If the parties had intended to enter into a legally binding contractual relationship as to the disposition of their property, why did they not reveal this to Fike, their attorney who drafted the instrument? The answer is simple—there was no agreement between them. It is plain from this record that the parties did not intend the peculiar form of the instrument, its joint and reciprocal nature, to have the effect of a contract. This conclusion is buttressed by Fike's testimony that it was his intention to draft a joint will but not a joint and mutual will.

The provision of the will describing it as a "mutual" will, considered in light of the circumstances under which it was executed, does not conclusively prove that the will was contractual in nature. See *Garland* v. *Meyer*, 169 S.W.2d 531, 534 (Tex.Civ.App. 1942). Having dictated the material portions of the will to his secretary, Fike

instructed her to refer to a Texas form book for the proper form to make the instrument a self-proving will. It is reasonable to infer that the word "mutual" was inadvertently inserted into the instrument by Fike's secretary as a result of her reliance on the form book. We are satisfied that petitioner was not familiar with the legal meaning of the term "joint and mutual will," and that he did not intend this term to have the legal meaning which respondent attaches to it.

Respondent relies on the affidavit signed by petitioner on or about October 1, 1965, in which petitioner refers to the instrument as a "joint and mutual will," as evidence that the instrument was such in fact. Instead of confirming respondent's argument, the affidavit demonstrates to us the petitioner's total unfamiliarity with the legal significance of the term "joint and mutual will." The sole purpose for filing the affidavit was to request a conference to protest the proposed deficiency of the gift tax here in issue. Such a purpose is completely inconsistent with the notion that petitioner used the term "mutual will" to mean a will executed pursuant to an agreement, because his principal argument then, as now, was that no contract or agreement existed. Apparently respondent's agent proposed the gift tax deficiency on the theory that the joint will constituted a contract between Maude and petitioner. Petitioner flatly denied the existence of any contractual obligations arising from the execution of the joint will. Petitioner expressly makes this point in the affidavit where he states: "The signing of this will was not a contractual obligation whereby the survivor agreed to dispose of his interest in any specified manner." Petitioner did not intend the word "mutual" in either the instrument or the affidavit to be interpreted in its legal sense of a will based on a contract. It is significant that the protest was prepared by a certified public accountant and not by an attorney.

To be sure, the nature of the instrument in question necessarily implies some prior arrangement between the parties. It was drafted by the same attorney, it was jointly executed, it was witnessed by the same witnesses, and it contained reciprocal provisions. Petitioner readily admits discussing the proposed testamentary disposition of his property with Maude, but we see nothing unusual or strange about a husband who was 68 years of age discussing his arrangements for the testamentary disposition of his property with his wife who was 66 years of age. Such prior discussions and arrangements by Maude and petitioner, who were obviously bound by the closest ties of affection, do not establish that the joint will was necessarily made pursuant to an enforceable contract or agreement. See *Curtis* v. *Aycock, supra*; Evans, "Concerted Wills—A Possible Device for Avoiding the Widow's Privilege of Renunciation," 33 Ky. L. J. 79, 80 fn. 67 (1945). The inference we draw from the entire record is that there was no sub-

sisting contract between Maude and petitioner to dispose of their respective property in the manner set forth in the joint will.

It is also settled law that a contract to make a will must be supported by consideration. *Hill* v. *Aldrich*, 242 S.W.2d 465, 466 (Tex. Civ. App. 1951). Consideration must be something "bargained for and given in exchange for the promise." Restatement, Contracts, sec. 75. The evidence shows that Maude's bequest of a life estate in her share of the community property was not "bargained for and given in exchange for" petitioner's reciprocal bequest. When petitioner executed his will leaving a life estate in his property to Maude, he was not paying her to make a reciprocal disposition of her property. When petitioner asked Fike to draw up his will to give Maude a life estate in his share of the community property, he was not induced or caused to do so because Maude made a reciprocal disposition of her property. The evidence shows that petitioner never said or did anything to indicate or imply that he bargained for Maude's bequest to him. Instead, the evidence establishes that petitioner was motivated by his concern for Maude and her welfare in the event he predeceased her. Pertinent to the issue of petitioner's motivation in executing his will is the fact that he contacted Fike on his own because he thought he would predecease Maude and he wanted to make certain that she would be adequately cared for after his death and that her property would not be tied up as a result thereof. On his initial visit to Fike, at which Maude was not present, petitioner indicated to him his proposed plan of testamentary disposition of his property. Subsequently petitioner informed Maude of his visit to Fike and of his proposed testamentary disposition. Maude, indicated at that time that she might want to talk with Fike and make a similar disposition of her property, and she did confer with him for that purpose. The motivation behind the reciprocal bequests was the desire by the joint testators to provide the survivor with sufficient income upon the death of the first to die. It should be noted that at the time of Maude's death, she and petitioner had been married over 40 years during which time they had been bound by close ties of affection. In view of this fact we are unwilling to imply the existence of a mercenary element in the execution of the joint will. We think the reciprocal bequests were not intended by the parties as consideration each for the other.

Accordingly, we conclude that the joint will was not based on a contract. There was no transfer of the remainder interest in petitioner's share of the community property effected by operation of the joint will because petitioner was in no way contractually bound to convey any interest in his property to his two sons at the time of Maude's death.

Even if we assume *arguendo* that the joint will was based on a contract between Maude and petitioner so that petitioner was obligated to

convey his property in accordance with the terms of the instrument, we are still not persuaded that petitioner at the time of Maude's death, either in fact or by operation of law, made a transfer of the remainder interest in his share of the community property within the provisions of section 2501.

As we have already indicated, the provisions of the will should be read and interpreted as though each of the parties thereto were making a separate disposition of only his or her share of the community property. When the instrument is so construed, it appears that each of the parties undertook by the third and fourth paragraphs of the instrument to guard against two contingencies: (1) By the third paragraph each undertook to make a disposition of his or her share of the property in the event he or she was the first to die, in which event a life estate interest in the property of the first to die was given to the survivor, with the remainder in such property to their sons; and (2) by the fourth paragraph each undertook to dispose of his or her property if he or she was the last to die, in which event the property owned by the survivor at that time was to go to their sons.

If the parties had intended the joint will to be contractual as well as testamentary in nature, the terms of such a contract must be adduced from the will itself, for there is no other evidence with respect to any agreement between them. The contract, as determined from the will, could only have been that, if the first to die would give to the survivor a life estate in his or her share of the community property owned at death, the survivor would leave all his property owned at death to the sons. Consequently, petitioner, as the survivor, would be obligated under the alleged contract to convey to his sons only the property owned by him at his death. He would be under no duty to make a present transfer of the remainder interest in his share of the community property owned by him at Maude's death.

Texas courts will not consider that parties to a joint and mutual will intended to limit the disposition by each of his or her own property in good faith during his or her lifetime unless a plain intention to that effect is expressed in the will. *Wallace* v. *Peoples*, 89 S.W.2d 1030 (Tex. Civ. App. 1935); *Curtis* v. *Aycock, supra; Dickerson* v. *Yarbrough*, 212 SW.2d 975, 979 (Tex. Civ. App. 1948). There is nothing contained in this joint will which indicates that it was the intention of the parties to limit the disposition by the survivor, petitioner, of his own property during his lifetime. In the absence of such an express limitation, assuming petitioner were obligated to dispose of his property at death to his sons, he could still in good faith dispose of his property during his lifetime. Petitioner was limited by the terms of Maude's will as to his "use, enjoyment, and occupancy" of the life estate he received in her community property, but he was under no such limitation as to the use, enjoyment, and occupancy of his own prop-

erty.[6] While petitioner received a life estate in Maude's property by devise, he retained the fee in his own property. Therefore, under the terms of the instrument he had broad powers with respect to the use, consumption, and disposition of his share of the community property during his lifetime. There is no doubt that the retention of a power to alter, amend, modify, or revoke a transfer, or the retention of the right to do any one of these things, precludes a transfer from being taxed as a gift where the power is held by the transferor. See *Burnet* v. *Guggenheim*, 288 U.S. 280 (1933); *Estate of Sanford* v. *Commissioner, supra; Hesslein* v. *Hoey*, 91 F.2d 954 (C.A. 2, 1937), certiorari denied 302 U.S. 756. The powers petitioner had over his lifetime use of his property are so broad as to constitute a power in the nature of a power to alter, amend, modify, or revoke the transfer, if there was a transfer under the circumstances of this case.[7] Even if we were to agree with respondent that the terms of the will incorporated a contract between Maude and petitioner by which petitioner was bound to convey the property owned by him at death to the sons, it does not follow that petitioner made a transfer of the remainder interest in property he owned at Maude's death by gift for the simple reason that such a transfer would be in the nature of a revocable transfer, and there can be no gift tax on a transfer unless the transfer is complete. *Estate of Sanford* v. *Commissioner, supra.*

We are convinced that petitioner did not make a taxable gift of the remainder interest in the community property which he owned at Maude's death. The only thing that can conceivably be considered as having passed at that time under the theory of mutual wills was the right to receive the property which petitioner owned at death. There is a substantial difference between the present transfer of a remainder interest in property owned by petitioner at Maude's death and the present transfer of a right to receive whatever property petitioner owns at his death. A joint and mutual will at the time of the death of the first testator passes no present interest in the property of the survivor. Its effect is contractual not dispositive.

In his reply brief respondent points to *Anna Eliza Masterson*, 42 B.T.A. 419 (1940), aff'd. 127 F.2d 252 (C.A. 5, 1942), as authority for his argument that petitioner made a gift of the remainder interest in his share of community property at Maude's death. We do not agree

---

[6] If the joint will was based on a contract, petitioner's control over his property would not be completely unrestricted. He could not do anything which would constitute a fraud to defeat the contract. However, it is clear that petitioner would have vast control or power over the property even within these limits.

[7] Petitioner cites *Awtry's Estate* v. *Commissioner*, 221 F.2d 749 (C.A. 8, 1955); *United States* v. *Ford*, 377 F.2d 93 (C.A. 8, 1967); and *McFarland* v. *Campbell*, 213 F.2d 855 (C.A. 5, 1954), as authority for the proposition that no property or property rights or interests were transferred from petitioner to his sons at Maude's death even if the joint will were based on a contract.

with respondent, that the *Masterson* case is "on all fours with the instant case." We regard the *Masterson* case as distinguishable on its facts. The Mastersons executed a joint will which expressly disposed of the "joint estate" which was defined as all of the community property held by both husband and wife.[8] Upon Mr. Masterson's death, his widow acted as executrix and accepted, pursuant to the will, sufficient income for her "maintenance and support" out of the total community property. Four years later she deeded all of her rights in the community property to her children except for support and maintenance from the limited life estate granted to her by will. She computed the gift tax on the value of a *limited* right to income. The Commissioner determined a deficiency on the basis of a gift of a full life estate and, then, by an amended answer, claimed tax on the value of a full half of the community. The Board held that the surviving spouse had waived the remainder interest of her share of the community property under the terms of the will, stating at page 425:

It thus appears that even though an instrument is designated a mutual or joint will it may as to the survivor, by reason of provisions contained therein, be more than a will which would not be operative until his or her death, but may effect the transfer or conveyance of property of such survivor at the same time it becomes becomes effective as the will of the first spouse to die.

The Board held that the instrument clearly indicated that the cotestators, husband and wife, intended that "their entire interests in the community estate should pass to * * * [their children] and that from and after the death of the first spouse to die the interest of the survivor in the community estate should be limited to that of a life tenant." 42 B.T.A. at 425–426. In the instant case, by contrast, there was no intention on the part of either the petitioner or Maude that their entire interest in the community property should pass to their two sons from and after the death of the first to die. Respondent has cited no authority to show that under the laws of Texas a joint and mutual will would be deemed sufficient to pass a present interest in the property of the survivor at the time of the first testator's death.

We believe the contract analysis is inadequate to explain the result reached in *Masterson* and that it must depend upon the election doctrine. It should be noted that the Board relied extensively on *Rossetti* v. *Benavides*, 195 S.W. 208 (Tex.Civ.App. 1917). One writer in discussing *Rossetti* v. *Benavides* concludes that this case "seems to be regarded as an election case." See Bailey, "Contracts to Make Wills— Proof of Intent to Contract," 40 Tex. L. Rev. 955–956 (1962). The Court of Appeals, in affirming the Board in *Masterson*, also appears

---

[8] Part I, par. 3, of the will provided, in part, as follows: "And for such purposes, we each waive our respective community rights and interest in said estate, and here agree that the same shall remain intact, subject to the terms, conditions and provisions hereof."

to support its decision on the rationale of the election doctrine. The Court of Appeals said at page 255:

The fact is simply this, Anna Eliza Masterson [the survivor] bound herself by waiving her community interest and accepting in lieu thereof a life interest in all of the property in accordance with the terms of the joint will and covenant.

This language connotes the application of the election doctrine rather than that of mutual wills. Under the laws of Texas this petitioner did not waive his interest in his share of the community property by accepting the benefit provided for him under Maude's will either on the theory of election or on the theory of mutual wills.

It is important to note that at its very next opportunity to apply the *Masterson* holding, the Fifth Circuit refused to do so and at that time it regarded *Masterson*, at the very best, as obsolete. In *Scofield* v. *Bethea*, 170 F.2d 934 (C.A. 5, 1948), the court held that a contractual joint and mutual will does not pass any of the survivor's property at the time her spouse dies. Therefore, on the survivor's death, her estate was taxable on her community half. The court refused to follow *Masterson* because the law of Texas must be applied. Judge Holmes, speaking for the majority, stated that *Wyche* v. *Clapp*, 43 Texas 543, being a decision of the Texas Supreme Court, was the law of Texas and that a subsequent holding by the Texas Supreme Court had also denied the correctness of the *Masterson* premise. The Court of Appeals, indicating that the Texas law of property was controlling, said at page 936:

This case [*Nye* v. *Bradford*, 193 S.W.2d 165 (Tex. Sup. Ct. 1946)] was decided four years after the decision of this Court in *Commissioner* v. *Masterson* * * *; and, if there is any conflict between the two cases, we are bound to follow the latest ruling of the highest court of the state.

In conclusion, we hold that the petitioner did not make a taxable gift of the remainder interest of his property at Maude's death.[9] Respondent's determination is erroneous.

*Decision will be entered for the petitioner.*

---

[9] In view of the conclusions reached herein, we did not consider it necessary to make any findings of fact requested by petitioner with respect to the execution or existence of the holographic codicil to Maude's will.